Estate of Howard Teel, Deceased, P. C. Newton, Executor v. Commissioner.
Estate of Howard Teel v. Comm'r
Docket No. 62637.
United States Tax Court
T.C. Memo 1958-101; 1958 Tax Ct. Memo LEXIS 127; 17 T.C.M. (CCH) 513; T.C.M. (RIA) 58101; May 29, 1958
J. Elliott Busey, Esq., Walnut Park Building, Portland, Ore., and Clarence D. Phillips, Esq., for the petitioner. Wendell M. Basye, Esq., and John D. Picco, Esq., for the respondent. WITHEY
*127 Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the petitioner's income tax and additions to tax under section 293(a) of the Internal Revenue Code of 1939 for the indicated years as follows: Addition to tax
Income tax
sec. 293(a)
Year
deficiency
I.R.C. 1939
1950
$11,300.66
$ 565.03
1951
20,270.73
1,029.34
1952
9,681.97
484.10
1953
780.50
39.03
The issues presented for our determination are the correctness of the respondent's action in determining (1) that the income of Howard Teel was to be determined on the basis of increases *128 in net worth plus personal expenditures for the respective years, (2) the amounts of Howard Teel's income for the years in question on such basis, and (3) that, for each of the years in issue, Howard Teel was liable for additions to tax for negligence under section 293(a) of the 1939 Code. The respondent concedes on brief that the assessment of any deficiency for 1950 is barred by the statute of limitations. The respondent further concedes on brief that, in view of the modifications of the net worth schedule contained in the stipulation of facts filed herein, there is no evidence of unreported income for 1953. Findings of Fact Some of the facts have been stipulated and are found accordingly. Howard Teel, sometimes hereinafter referred to as decedent, timely filed Federal income tax returns for each of the years in issue with the director of internal revenue for the district of Oregon at Portland, Oregon. He died testate on December 8, 1954, a resident of Portland, leaving assets valued at approximately $266,000. P. C. Newton was duly appointed executor under his Last Will and Testament on December 9, 1954. During the taxable years here involved and at the time of his death, *129 decedent owned and operated a retail plywood yard which he had established during the early or middle 1930's. In addition, during the years here in issue, the decedent engaged to some extent in the purchase and sale of various war surplus materials. In the operation of his plywood business Teel kept check registers, showing disbursements for purchase and other business expenses, beginning with the year 1942 and continuing until his death. These registers are fully supported by canceled checks and bank statements. He also kept sales invoices representing sales to customers for the year 1953 and for October, November, and December 1952. For the period from October 1952 until the end of 1954, a numerical listing of invoices was maintained by Teel in a sales register which has been made available to the parties herein. Teel kept a summary of figures in his own handwriting, captioned "Sales," which figures are generally consistent with the total gross sales reported by him on his income tax returns for the years in issue. The decedent reported his business income and expenses on an accrual basis and his income from stocks and bonds on a cash basis. Teel personally kept his own records *130 and prepared his income tax returns himself until 1954 when for the first time he employed a bookkeeper to assist him in the accounting work connected with his business. The bookkeeper attempted to persuade Teel to change his method of bookkeeping from a single-entry system to a double-entry system but was unsuccessful in her efforts to do so. A revenue agent and David Swart, an attorney representing the petitioner, searched the basement of the house of the executor for Teel's bookkeeping records. No books or records of original entry showing the sales of the plywood business were located. However, the executor made available to the agent all of the books and accounting records relating to the business known to be in existence. The net worth statement prepared by the respondent has been modified by stipulation as follows: "On page 2 of Respondent's 'Computation of Net Income Computed Under the Increase in Net Worth Method', the item described as 'Federal taxes paid' should be modified and changed to read as follows: "12/31/50
12/31/51
12/31/52
12/31/53
TOTAL
"Fed. Taxes Paid
$5,629.19
$34,278.50
$13,051.37
$5,953.36
$58,912.42
"On page *131 1 of Respondent's 'Computation of Net Income Computed Under the Increase in Net Worth Method', the following item should be added as a fourth item under the heading 'Government Bonds': "12/31/49
12/31/50
12/31/51
12/31/52
"U.S. Treasury 2% Coupon Bond
$4,000
$4,000
$4,000
$4,000
"An additional asset under a new heading 'Deposit' should be incorporated in Respondent's 'Computation of Net Income Computed Under the Increase in Net Worth Method', as follows: "DEPOSIT
12/31/49
"Deposit with State of Oregon for 1950 Oregon Income Tax
$1,200
"On page 1 of Respondent's 'Computation of Net Income Computed Under the Increase in Net Worth Method', the first item listed as Jacobson & Son under the heading 'Notes Receivable' should be modified as follows: "12/31/50
12/31/51
12/31/52
12/31/53
"Jacobson & Son
$2,000
$2,000
$7,700
$6,500
"The following two adjustments should be made with respect to the net worth computation for the period ended December 31, 1953, contained in Respondent's 'Computation of Net Income Computed Under the Increase in Net Worth Method': First, the 'Accounts Receivable' on December 31, 1953 should *132 be in the amount of $10,140.21 instead of $14,000; Secondly, under 'Notes Receivable' the John J. and Vervel H. Beggs note should have a value of $3,224.00 on December 31, 1953, instead of $3,720.00." It was stipulated at the trial that for the years 1950 through 1953 the United States National Bank Savings Account No. X5994 of Howard Teel should be shown in the respondent's net worth computation as of the end of each of the years in issue in the amounts as follows: Year ended
Dec. 31
Amount
1950
$10,056.45
1951
10,207.40
1952
10,412.56
1953
10,621.86
Decedent reported as net income on his income tax returns for the taxable years 1950 to 1953, inclusive, the following amounts: Year
Amount
1950
$52,501.54
1951
42,125.18
1952
24,491.45
1953
14,492.88
Decedent reported on his income tax returns as gross receipts from his business for the taxable years 1950 to 1953, inclusive, the following amounts: Year
Amount
1950
$226,386.41
1951
237,670.09
1952
211,437.16
1953
239,499.96
The increases in the net worth of Howard Teel for the years ended December 31, 1950 to 1953, inclusive, were as follows: 12/31/50
$54,736.77
12/31/51
27,319.76
12/31/52
21,051.33
12/31/53
1,067.62 [1]
*133 The correct taxable net income of decedent for the taxable years 1951 and 1952 was $64,598.26 and $37,102.70, respectively. Decedent realized unreported income for the taxable years 1951 and 1952 in the amounts of $22,473.08 and $12,611.25, respectively. A sales invoice evidencing each sale made made through the warehouse connected with the plywood business during the years at issue was made out by the warehouse manager, James H. Rand, and given to Howard Teel. Such invoices for sales made prior to October 1952 are missing. A portion of the deficiencies in the income tax liability of Howard Teel for 1951 and 1952 was attributable to his negligence. Opinion The petitioner contends that the books and records of Howard Teel for the years here in issue were adequate and clearly reflected his income for those years. Accordingly, the petitioner further contends that the respondent is without authority to determine the income of Teel by the increase in net worth plus nondeductible expenditures method and thereby to determine that his taxable income as reported on his returns was understated. In the alternative, the petitioner maintains that, in the event *134 we determine that the use of the net worth method by the respondent was proper, certain items appearing in the net worth statement are incorrect. In addition, the petitioner contends that the imposition of an addition to tax under section 293(a) of the 1939 Code is improper. Issue 1. Use of Net Worth Method The petitioner's contention that the books and records of Howard Teel clearly reflected his income for the taxable years in issue is not supported by the testimony of its own witness, Arie H. Langton, a certified public accountant. Langton acknowledged that with the available records there was no way that he could verify the gross sales of the retail plywood business conducted by decedent for any year prior to 1953. Langton did not testify that he was able to compute from the books and records made available to him the proper taxable income of the decedent for any year other than 1953. Langton did testify, however, that the income tax return filed by Howard Teel for 1953 was consistent with the available books and records. In support of its contention that the available books and records of decedent are accurate and clearly reflect his income for the years in issue, the petitioner *135 places considerable reliance on a summary of figures in decedent's handwriting, captioned "Sales," which are consistent with the total gross sales reported by him on his income tax returns for each of the years in question. However, the record before us contains no evidence that this summary was prepared by Howard Teel in the ordinary course of business. There is no showing as to the time when this document was prepared or for what purpose. Since no showing was made that any cash book, ledger, journal, or other document of original entry was maintained by the decedent from which sales could have been determined prior to October 1952, we are unable to accept the aforementioned summary of sales as evidence of sales. James H. Rand, the manager of the warehouse connected with the retail plywood business owned and operated by Teel, testified that all sales from the warehouse were written on consecutively numbered tickets or slips and that all such sales slips were turned over to Teel. However, there is no evidence showing the use or disposition of the sales slips made by Teel, and such slips or invoices for sales made prior to October 1952 apparently are missing. The system of bookkeeping *136 employed by Howard Teel was a single-entry system. The disbursements reflected on the decedent's books were substantiated by canceled checks and bank statements. In view of the foregoing, we are not able to find that the books and records of the decedent substantially reflect his correct income for the years in issue. The mere fact that a taxpayer maintains books and records from which an income figure can be computed does not prevent the Commissioner from utilizing the increase in net worth plus expenditures method to show that the amount of income reflected by the taxpayer's books was in fact incorrect or false. Estate of W. D. Bartlett, 22 T.C. 1228. In Harry Gleis, 24 T.C. 941, affd. 245 Fed. (2d) 237, we stated as follows, at page 949: "As we have heretofore held, the net worth method is not a method of accounting within the scope and meaning of section 41, supra. It is not a substitution for any recognized system of keeping books of account. Morris Lipsitz, 21 T.C. 917. Rather, if properly applied, the net worth method merely evidences income apparently received. Estate of W. D. Bartlett, 22 T.C. 1228. *137 Nor is its use banned simply because a taxpayer maintains a set of books from which an income can be computed. To the contrary, when there is an inconsistency between the taxpayer's increase in net worth and the income as reflected in his books and reported by him on his tax returns, the net worth method, if approved, provides clear and convincing evidence that such books are not trustworthy, and that all income has not been reported. Morris Lipsitz, supra." The net worth statement prepared by the respondent, as subsequently modified by the parties on stipulation, discloses an increase in the net worth of Howard Teel for 1951 and 1952 in the amounts of $27,319.76 and $21,051.33, respectively. Taking into account nondeductible expenditures, such as Federal taxes and living expenses, and comparing the result with the net income reported on the decedent's income tax returns, the net worth determination shows unreported income for 1951 and 1952 in the respective amounts of $22,473.08 and $12,611.25. However, the modified net worth statement does not indicate unreported income for 1953 but rather shows an overstatement for that year. We accordingly hold that the utilization *138 by the respondent of the increase in net worth method of determining the income of the decedent for 1951 and 1952 was not arbitrary or without justification. Issue 2. Contested Items in Net Worth Statement With respect to the computation of net income determined under the increase in net worth method, as herein modified, the parties are in disagreement only with respect to the four items discussed below. 1. Living Expenses. Although the record discloses that Howard Teel was a bachelor and lived economically, we are unable to find evidence of his personal living expenses sufficient to overcome the presumptive correctness of the respondent's determination that $3,000 per year constituted a reasonable allowance for such expenses. 2. Accounts Receivable. The parties have stipulated that decedent's accounts receivable as of December 31, 1953, amounted to $10,140.21. The respondent in his net worth schedule has determined that Howard Teel had accounts receivable outstanding as of December 31, 1949, December 31, 1950, December 31, 1951, and December 31, 1952, in the amounts of $2,000, $4,000, $6,000, and $8,000, respectively. Petitioner contends that such determinations by the respondent *139 were arbitrary and argues that we properly should redetermine such amounts by applying the 1953 ratio of accounts receivable to annual sales (approximately 4 1/2 per cent of accounts receivable to gross sales) to the annual sales for the years 1949 to 1952, inclusive. However, as we have noted heretofore, there is no evidence of sales in the record for any year prior to 1953. In the absence of actual sales figures or other evidence of accounts receivable, we are unable to disturb the respondent's determination on this point. 3. Standard Deduction. In his income tax returns for 1952 and 1953, Teel deducted his Oregon state income taxes as a business expense in computing his adjusted gross income for those years. The decedent erroneously claimed the optional standard deduction in the amount of $1,000 in his return for those years in lieu of itemizing expenses. The respondent has not questioned the decedent's deduction of his Oregon income taxes but in the net worth statement the respondent reduced the amount of Howard Teel's reported net income for 1952 from $25,491.45 to $24,491.45, and for 1953 from $15,492.88 to $14,492.88. The petitioner maintains that, because the optional standard *140 deduction is not a cash item and the erroneous deduction thereof does not change the amount of reported gross income for 1952 and 1953, the amounts shown on the net worth schedule as reported net income for those years should be increased by $1,000. However, since the petitioner is not entitled to claim the optional standard deduction for 1952 and 1953, and because the amount shown on respondent's net worth schedule as reported income is described as net income, we find no merit in the petitioner's contention. 4. Depreciation Deductions. The respondent in his net worth statement has reduced the amounts claimed by Howard Teel as deductions for depreciation on four assets: a 1949 Oldsmobile automobile, a 1952 Oldsmobile automobile, an apartment building located at 4621 N.E. 12th Avenue, Portland, Oregon, and a residence located at 6127 N.E. Fremont Street in that city. The petitioner contends that these assets should be listed in the net worth schedule at their original cost less the amount of depreciation claimed on the returns. However, since the petitioner has introduced no evidence with respect to the business use, the useful life, or other elements necessary to determine a proper *141 depreciation allowance for these assets, the respondent's determinations must stand. We accordingly hold that the net worth statement prepared by the respondent, as modified by stipulation, is accurate and we further find that Howard Teel understated his net income for 1951 in the amount of $22,473.08 and for 1952 in the amount of $12,611.25. Issue 3. Addition to Tax for Negligence The petitioner contends that the respondent has improperly determined that an addition to tax for negligence under section 293(a) of the 1939 Code should be imposed. The petitioner, however, has not met its burden of proving that the decedent was not negligent. There is some evidence contained in the record herein that Teel failed to maintain accurate records from which his income for the taxable years here involved could be determined. Teel's warehouse manager, James H. Rand, testified that he made out an invoice disclosing every sale made through the warehouse connected with the plywood business during the years at issue. Such invoices for sales made prior to October 1952 are missing and there is no indication as to what use or disposition was made of them after they were given to the decedent. *142 Since it appears that Teel prepared his income tax returns from whatever records he possessed, any failure on his part to maintain and preserve adequate records is reflected in the deficiencies in his income tax liability for 1951 and 1952. We therefore are unable to find that the deficiencies in the income tax liability of Howard Teel for 1951 and 1952 are not attributable to his negligence in the handling of his records. Consequently, the respondent's determination of additions to tax under section 293(a) of the 1939 Code must be sustained. Decision will be entered under Rule 50. Footnotes
1. Overstatement.↩